Breitel, J.
These two cases test the use of telephone conversations intercepted under an eavesdropping warrant to establish probable cause for a subsequent search warrant against the outside party to the conversation, not named in the eavesdropping warrant. Appellant Zorn and respondent Gnozzo contend that the conversations may not be used against persons not named in the eavesdropping warrant, and especially so where the warrant was never amended to include them. Belated issues raised in the Zorn appeal are whether the eavesdropping warrant was supported by probable cause and whether its 30-day term and absence of limitation as to hours for execution was too broad.
In the Zorn case, the hearing court in New York County denied defendant’s motion to suppress evidence obtained from the eavesdropping and subsequent search warrants. After defendant’s plea of guilty to possession of gambling records (Penal Law, § 225.15), a misdemeanor, the court sentenced him to nine months’ imprisonment. The Appellate Division, First Department, affirmed by a divided vote.
In the Gnozzo case, the hearing court in Erie County granted defendant’s motion to suppress evidence. The Appellate Division, Fourth Department, unanimously affirmed.
The order of the Appellate Division in Zorn should be affirmed, and that in Gnozzo reversed. Neither the Constitu *139 tian nor the former Code of Criminal Procedure and current Criminal Procedure Law prohibit the use of validly intercepted conversations against an outside party to the conversation, not named in the warrant.*
In Zorn, an eavesdropping warrant was issued for two telephones, the home telephone of one Slayka and a public telephone at a street intersection. Interception was limited to “ communications ” of Slayka “pertaining to the crimes of Promoting Gambling as a Felony and Conspiracy to Promote Gambling ”,
In the application for the eavesdropping warrant the prosecutor averred that one Boss, a stockbroker, had testified to placing bets with Slayka, alias Brown, up to $10,000 a week. Slayka had prior convictions for gambling. He had been overheard in person on at least two occasions discussing bets with others having similar convictions, and money had changed hands. Slayka was seen using the public telephone booth at the street intersection on four occasions in February and March, 1970. On the last occasion pn officer standing outside the booth overheard Slayka saying “ we got hit pretty good on that Knick game last night.” The testimony of large bets having been placed, the association with known gamblers, the bits of conversations, and the telephone calls allegedly established commercial gambling activity.
The prosecutor’s affidavit was dated March 23, 1970, and the warrant made effective March 25, 1970. On March 31, Slayka was overheard placing a Call on the public telephone to a telephone in Zorn’s apartment. Slayka stated over the telephone, ‘ ‘ I laid you a dollar forty-five for a nickel on Baltimore and I had UCLA for four dollars, that’s it ... I owe you 314 on the ticket.” The outside person replied, “ OK, I’ll tell him.” The next day another call to the same number included conversations about betting on sports events.
On April 21, 1970 a warrant was issued on the basis of the intercepted conversations to search an apartment at an address *140 obtained from the telephone company, and where the telephone to which Slayka had made calls was located. Pursuant to the search warrant the police entered the apartment the next day, and found papers indicating that the apartment was used as a wire room for large-scale gambling. Zorn came to the apartment while the police were there, opened the door with a key, and was arrested.
Defendant Zorn contends that the eavesdropping warrant was issued without probable cause, and that the 30-day period without limitation as to execution day or night was unconstitutionally broad.
Issuance of an eavesdropping warrant requires? of course, probable cause (People v. Kaiser, 21 N Y 2d 86, 96, affd. sub nom. Kaiser v. New York, 394 U. S. 280; Berger v. New York, 388 U. S. 41, 55). In People v. Feinlowits (29 N Y 2d 176) the court held affidavits, less incrimináting than those here, adequate. The court stated: “ [T]here obviously was probable cause for the seizure by reason of the extensive observation of defendant’s suspicious activities. Defendant, a known and convicted gambler, was seen to frequently use a public telephone booth, despite having access to a private telephone at his office. Upon one occasion, a police officer personally heard defendant discussing sports lines on baseball games and quoting odds on the day’s games to someone with whom he was in contact on that telephone.” (id., at p. 182). In this case the named inside person, Slayka, was a known and convicted gambler. He had been under observation from September, 1969 to March, 1970, when the eavesdropping warrant was issued. He had been seen conversing with other known gamblers, and on at least two occasions had been overheard talking about losses, relaying bets, and obtaining “lines” on future sporting events. He had been observed in the public telephone booth in question on four occasions, and on the last he was overheard mentioning losses on a professional basketball game. Taken together, the facts establish probable cause.
The eavesdropping warrant in Zorn authorized interception for a 30-day period without restriction as to day or night. It expressly denied authority, however, to listen to conversations privileged or unrelated to the stated crime.
*141 After the former New York statute permitting eavesdropping warrants for renewable two-month periods was declared unconstitutional in the Berger case (388 U. S. 41, supra), the maximum period for interception was reduced to 30 days with renewals only upon a further showing of probable cause (Code Crim. Pro., § 819, subd. 7, § 821; CPL 700.30, 700.40). The constitutionality of the 30-day period has not been previously tested in New York, but the same period provided by the Federal statute has been repeatedly upheld by the lower Federal courts (U. S. Code, tit. 18, § 2518, subds. [5], [6]; United, States v. Leta, 332 F. Supp. 1357, 1360-1361; United States v. Sklaroff, 323 F. Supp. 296, 306-307, app. dsmd. 427 F. 2d 1140; cf. United States v. King, 335 F. Supp. 523, 530, 537). For this type of interception a 30-day period, given the extent and nature of the activity under surveillance, is not excessive.
Defendants contend that the eavesdropping warrant should have been limited to daylight hours, but such a restriction is not required. As stated in United States v. Becker (334 F. Supp. 546): “ It is a matter of common knowledge that the activities of [a gambling] enterprise — the receiving and dispensing of information and wagers in regard to various types of sporting events, such as horse racing, boxing, báséball, hockey, football, which take place at either coast of the continent and points in betweén and at different hours of the day and night — are not limited to such specific hours .that an interception order can, as a practical matter, define precisely and limit the period during which interception can be conducted.” (id., at p. 549). Moreover, there is no complaint about the time when the interception was actually made. Any error, if there were error, was technical and should be overlooked (cf. People v. Glen, 30 N Y 2d 252; 261-262; People v. Varney, 32 A D 2d 181).
In the Gnozzo ease, there is no dispute about the validity of the eavesdropping warrant. The warrant was issued for a 20-day period, and was limited to conversations of one Lombardo over two specified telephone numbers related to the placing or “laying-off” of bets. Pursuant to the warrant a conversation between Lombardo and defendant Gnozzo was intercepted relating to gambling. Primarily on the basis of evidence and leads obtained from this conversation, a search warrant was issued for Gnozzo’s premises. Evidence uncovered *142 during, the search led to Gnozzo’s arrest. Gnozzo’s motion to suppress evidence, in a decision at odds with that in the Zorn case,-was granted.
Both Zorn and Gnozzo contend that under the statutory scheme the conversations overheard, though involving the suspect named in the eavesdropping warrant and the criminal activity specified, may not be used against the outside parties. They concede, .however, that the conversations could have been used against the inside parties.
The eavesdropping warrants complied with the statutes. The Code of Criminal Procedure (§ 817, subd. 2, par. [b]) then provided to the same effect as the CPL (700.20, subd. 2, par. [b]) which provides that an application fpr an eavesdropping warrant must contain “ (iii) a particular description of the type of the communications sought to be intercepted, and (iv) the identity of the person, if known, committing such designated offense and whose communications are to be intercepted”. (Emphasis supplied.) The provisions governing the form of the warrant are comparable (CPL 700.30, subds. 2, 4; Code Crim. Pro., § 819, subds. 2, 4). A “communication” is defined to include “conversation and discussion ” (CPL 700.05, subd. 3; Code Crim. Pro., § 814, subd. 3). The communications in each case were adequately described and the known suspects were identified. The statute required identification only of those known, thus excluding those whose identity is unknown.
The contents of a communication intercepted pursuant to a valid warrant may be disclosed “ in any criminal proceeding in any court or in any grand jury proceeding” (CPL 700.65, subd. 3; Code Crim. Pro., § 825, subd. 3). There is no requirement the communication be used only against named suspects.
Service of written notice within 90 days after termination of the eavesdropping warrant is required ‘ ‘ upon the person named in the warrant and such other parties to the intercepted communication as the justice may determine in his discretion is in the interest of justice” (CPL 700.50, subd. 3; Code Crim. Pro., § 822, subd. 3). It was apparently obvious to the Legislature that statements of outside parties to the communications would necessarily be intercepted. It may be inferred from the notice requirement to ‘ ‘ other parties ’ ’ that the State contemplated use of these statements in criminal proceedings.
*143 Zorn, however, contends, though apparently Gnozzo does not, that the warrant must have been amended to include his name before the conversation could be used against him.
The provision relied upon requires an amendment for a communication intercepted “ which was not otherwise sought ”, thus: ‘ ‘ When a law enforcement officer, while engaged in intercepting communications in the manner authorized by this article, intercepts a communication which was not otherwise sought and which constitutes evidence of any crime that has been, is being or is about to be committed, the contents of such communications, and evidence derived therefrom, may be disclosed or used as provided in subdivisions one and .two. Such contents and any evidence derived therefrom may be used under subdivision three when a justice amends the eavesdropping warrant to include such contents. The application for such amendment must be made by the applicant as soon as practicable. If the justice finds that such contents were otherwise intercepted in accordance with the provisions of this article, he may grant the application.” (CPL 700.65, subd. 4; see, also, Code Crim. Pro., § 825, subd. 4). Where the communication intercepted involves the crime specified in the warrant, the named suspect, and an unknown outside party, at least in this instance, the communication is “ sought ” and no amendment is required. Zorn concedes that the comrmmication was “ souglit ” if used against the named suspect, Slayka. Whether an amendment is required depends on the disclosure of a different crime, and perhaps on other circumstances, but not against whom the communication is to be used. (Semble contra, People v. Szymanski, 62 Misc 2d 1065, 1067; cf. People v. D’Amico, 37 A D 2d 730.)
The Commission on Revision of Penal Law and Criminal Code spelled out the intent of the provision for amendment in its memorandum to the predecessor statute which also referred to communications “ not otherwise sought”: “ Section 822 relates to a situation where, in the course of executing a valid eavesdropping warrant (which authorizes, of course, the overhearing of a particularly described conversation), the applicant or his designated agent unexpectedly overhears an incriminating conversation that is totally unrelated to the crime for which the warrant was issued. A line of authority upholds the seizure *144 and use of evidence not specified in a search warrant but discovéred'ín the course of executing such warrant. Similarly, a valid eavesdropping warrant should allow the use of unexpected conversations relating to a crime other than the one under investigation. Since the question is not altogether free from doubt, cogent reasons exist for dealing with it statutorily, as does § 822 ” (McKinney’s 1968 Session Laws of New York, Memorandum, p. 2293, at p. 2296). Thus, the legislative intent was to require amendments where different crimes are disclosed (see, also, People v. Rufino, 62 Misc 2d 653, 658).
Zorn and G-nozzo also contend that use of their conversations without their being named in the eavesdropping warrants violates the State and Federal Constitutions. It was on the basis of' the Federal Constitution that the County Court in Erie County granted Gnozzo’s motion to suppress (64 Misc 2d 599).
Section 12 of article I of the Constitution of the State of New York provides:
“ The right of the people to be secure in their persons, houses, papers and effects,'against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.
“ The right of the people to be secure against unreasonable interception of telephone and telegraph communications shall not be violated, and ex parte orders or warrants shall issue only upon oath or affirmation that there is reasonable ground to believe that evidence of crime may be thus obtained, and identifying the particular means of communication, and particularly describing the person or persons whose communications are to be intercepted and the purpose thereof.”
The Fourth Amendment of the Federal Constitution is identical in language to the first paragraph above quoted.
It is basic to both constitutional provisions that only “ unreasonable searches and seizures ” and “ unreasonable interception of telephone communications ” are prohibited (Katz v. United States, 389 U. S. 347, 354; Berger v. New Torh, 388 U. S. 41, 53, supra; United States v. Escandar, 319 F. Supp. 295, 301). The defendants concede that eavesdropping was conducted in accordance with the terms of the warrants.
*145 After prohibiting unreasonable searches and seizures, both constitutional provisions specify the conditions under which warrants may issue. The affidavit in support of the warrant must “identify the particular person or persons whose communications are to be intercepted.” The warrants in these cases did what the Constitution requires by naming suspects. Indeed, the constitutional validity of the warrants as to the named suspects is not challenged.
Eavesdropping statutes are valid even if, of necessity, they entail interception of both ends of a telephone conversation. The Katz and Berger cases (389 U. S. 347; 388 U. S. 41, supra) make it clear that eavesdropping warrants with proper limiting conditions may be valid. In United States v. Escandar (319 F. Supp. 295, supra) the court rejected the argument that no constitutionally valid eavesdropping statute may be drawn because both ends of a conversation are necessarily overheard. In doing so, the court cited the Katz and Berger cases (389 U. S. 347; 388 U. S. 41, supra).
The precise issue in the present cases has been raised in the Federal courts. They have consistently held the eavesdropping statutes and warrants valid, and the conversations usable against persons not named in the warrants. (United States v. Cox, 449 F. 2d 679, 686-687; United States v. Iannelli, 339 F. Supp. 171, 177; United States v. LaGorga, 336 F. Supp. 190, 192-193; United States v. King, 335 F. Supp. 523, 531-532, 538-539, supra; United States v. Perillo, 333 F. Supp. 914, 921; United States v. Sklaroff, 323 F. Supp. 296, 325, supra; United States v. Escandar, 319 F. Supp. 295, supra.)
In no context have suppression rules been extended to exclude evidence, the seizure of which is authorized by a valid warrant. A valid eavesdropping order of necessity permits the interception of communications of at least two parties. Since seizure of the conversation was authorized, the evidence seized is admissible against the parties to the conversation. Admissibility does not determine the lawfulness of the seizure; the lawfulness of the seizure determines admissibility.
Accordingly, the order of the Appellate Division in the Gnozzo case should be reversed and the case remanded, and the order in the Zorn case should be affirmed.
*146 Chief Judge Fuld and Judges Burke, Scileppi, Bergan, Jasen and Gibson concur.
■ In People v. Gnoszo: Order reversed and case remitted to Erie County Court for further proceedings in accordance with - the opinion herein.
In People v. Zorn: Order affirmed.

 As to the applicable procedural Statute, see CPL 1.10 (subd. 2). The new statute took effect after the hearings and before the Appellate Division determinations. Since the former code and the new procedural statute are substantially similar insofar as relevant, it makes no difference which is considered applicable.